PIGUE *v.* GENERAL MOTORS CORPORATION.

1. WORKMEN'S COMPENSATION—REVIEW OF RECORD BY SUPREME COURT.

In workmen's compensation cases the Supreme Court reviews the record to determine if there is competent evidence to support the finding of facts made by department of labor and industry.

2. SAME—MACHINE REPAIR HELPER—FALL FROM SCAFFOLDING—TOTAL DISABILITY—EVIDENCE.

Evidence justified finding of fact that machine repair helper was totally disabled from doing the heavy work he had been doing at the date of accidental injury sustained in fall from scaffolding.

3. SAME—LOSS OF WAGE-EARNING CAPACITY.

The principle upon which workmen's compensation is awarded is that the employee has suffered a loss in his wage-earning capacity as a result of a compensable injury suffered while in the employ of his employer.

4. SAME—WAGE-EARNING CAPACITY AT WORK IN WHICH ENGAGED AT TIME OF INJURY.

The test of an injured employee's right to workmen's compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured.

5. SAME—PARTIAL, PERMANENT INCAPACITY—HEAVY LABOR—LIGHT WORK—OPPORTUNITY.

A person who receives a compensable injury causing partial permanent disability which incapacitates him from performing heavy work theretofore done and who is unable to obtain lighter work which he is able and willing to do does not thereby lose his right to compensation.

6. SAME—MEASUREMENT OF LOSS OF EARNING CAPACITY.

The amount an employee was capable of earning at the time he seeks further compensation is to be compared with his earning capacity at the time he received his injury in order to determine the diminution in his earning power.

7. TORTS—STRIKE.

A "strike" is a concerted refusal by employees to do any work for their employer until the employer grants the concession demanded.

8. WORKMEN'S COMPENSATION—PAYMENT DURING STRIKE.

Employee who had performed heavy labor as a machine repair helper until he sustained an accidental injury totally incapacitating him from performing such work but was thereafter given light clerical work which he was able to perform and which he did perform before and after going out on strike by labor union of which he was a member and which light work was available to him during strike was not entitled to workmen's compensation for period of strike since the loss of earnings at lighter work was not due to injury.

Appeal from Department of Labor and Industry. Submitted January 9, 1947. (Docket No. 47, Calendar No. 45, 520.) Decided April 8, 1947.

Dwayne L. Pigue presented his claim for compensation against General Motors Corporation (Oldsmobile Division) for injuries sustained while in its employ. Award to plaintiff. Defendant appeals. Reversed.

*Raymond H. Rapaport,* for plaintiff.

*Henry M. Hogan* (*G. W. Gloster, R. V. Hackett,* and *E. H. Reynolds,* of counsel), for defendant.

SHARPE, J. Leave having been granted, defendant appeals from an award of the department of labor and industry entered July 10, 1946, granting plaintiff compensation at the rate of $21 per week

for total disability from November 21, 1945, to March 14, 1946.

Plaintiff was injured on June 29, 1944, while in the employ of defendant company as a machine repair helper. He fell from a scaffold, striking his shoulder and the back of his head and injuring his chest. Following the injury plaintiff was paid compensation from July 13, 1944, to August 26, 1944, and from February 5, 1945, to March 24, 1945.

After his injury, plaintiff was given a job by defendant doing clerical work. It has been stipulated that on March 14, 1946, plaintiff returned to clerical work of the same character which he was doing up to the time of the strike with wages at the rate of $1.325 per hour; that on March 19, 1946, his rate was increased to $1.375 per hour; and that plaintiff is still employed by defendant company at this rate of pay.

In appealing, defendant urges that there is no competent evidence that plaintiff's disability is the result of the injury. Plaintiff testified that he was first employed by defendant corporation June 10, 1936, was given a physical examination, including X-rays; that from the time he was first employed until the date of the accident, he did heavy work and lost no time because of sickness or ill health; and that while his shoulder condition has healed satisfactorily, nevertheless, he suffers severe pains in his chest which come on with any appreciable amount of exertion.

Dr. Cyrus B. Gardner, a witness produced by plaintiff, testified as follows:

"*Q.* Doctor, what would your opinion be as to disability since the date of the accident right up on through the present? Would he in your opinion be able to do heavy work or any work involving lifting in any of that period?

"*A.* Yes, I think he can do it, because he is a strong, powerful man, but I feel it would be injudicious and put his life in jeopardy if he did heavy physical exercise. I think if that man ran half a block he might drop dead. I think that is a dangerous thing, and so I advised him against it.

"*Q.* And would it in your opinion be painful for him to do heavy work?

"*A.* Be painful?

"*Q.* Yes.

"*A.* Well, that is a matter which he himself could only evaluate. I think he is probably telling the truth about that, if he does have pain when he does heavy work. His blood pressure would indicate that that might be true, not only possible but entirely probable.

"*Q.* Well, doctor, assuming the fact that you have stated to be true and adding to them further the fact that prior to the time of the accident he was a well, healthy, and able-bodied man, had never had any difficulty in his chest region, and tells us that he worked steadily at more or less heavy work up to that time without any difficulty, would you have an opinion as to whether or not there might be a causal connection between his present condition and the accident?

"*A.* I would have an opinion.

"*Q.* What would your opinion be, doctor?

"*A.* It would seem that the only logical conclusion to draw would be to the effect that there was a causal relationship between this accident which was a severe accident and the pain which he seems to have had since that time."

In compensation cases we review the record to determine if there is competent evidence to support the finding of facts, see *Putnam* v. *Beechler,* 299 Mich. 552.

In our opinion there is competent testimony to sustain the finding of fact that plaintiff was totally

disabled from doing the work he had been doing at the date of the injury of June 29, 1944.

The pivotal question in this case relates to plaintiff's right to compensation during the period of a strike called by a union of which he is a member. The department of labor and industry awarded plaintiff compensation during this period, stating:

"The remaining question is whether the defendant is entitled to be relieved from the payment of compensation during the plaintiff's aforementioned period of disablement because of the fact that he was a participant in a strike called by the union of which he is a member. We think not. The workmen's compensation law obligates an employer operating thereunder to pay compensation benefits to employees who are either totally or partially disabled because of injuries arising out of and in the course of their employment. The foregoing requirement is subject only to the limitation that compensation payments may be either reduced or entirely omitted when the employer provides the employee with suitable employment at which he is able to earn wages at least equal to those being received at the time of his injury. The employer's inability to provide suitable employment at equal wages, be it from lack of materials or lack of demand for its products or inability to operate its plant for the reason appearing in this case, namely, a plant strike, is not, in our opinion, a sufficient cause to relieve it from the payment of compensation benefits, and we so find; see *Sotomayor* v. *Ford Motor Co.,* 300 Mich. 107, and authorities cited therein. An order will be entered affirming the award of the deputy commissioner."

In coming to our conclusions on this question we take into consideration that plaintiff was given light employment at wages equal to or greater than he received at the time of his accidental injury; that

he was a member of the union that called a strike on November 21, 1945; and that but for this strike plaintiff would have remained in the employ of defendant company with no lessening of wages.

The principle upon which compensation is awarded is, that the employee has suffered a loss in his wage-earning capacity as a result of a compensable injury suffered while in the employ of his employer.

In *Levanen* v. *Seneca Copper Corp.*, 227 Mich. 592, 601, we said:

"The test of an injured employee's right to compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured."

See, also, *Runnels* v. *Allied Engineers, Inc.*, 270 Mich. 153.

In *Coleman* v. *Whitehead & Kales Co.*, 268 Mich. 412, we said:

"When a person doing heavy work receives an injury causing a partial permanent disability which incapacitates him from continuing to do such heavy work and he is unable to obtain lighter work which he is able and willing to do, he does not lose his right to compensation. * * * The amount the employee was capable of earning at the time he seeks further compensation is to be compared with his earning capacity at the time he received his injury in order to determine the diminution in his earning power."

In *Hood* v. *Wyandotte Oil & Fat Co.*, 272 Mich. 190, we discussed the question of wage-earning capacity after an injury and said:

"What is meant by the term 'wage-earning capacity after the injury?' It is not limited to wages actually earned after injury, for such a holding would encourage malingering and compensation is

not a pension. On the other hand mere capacity to earn wages, if 'nondescript' by reason of injury, affords no measure unless accompanied by opportunity to obtain suitable employment. Opportunity is circumscribed by capacity of the injured and openings to such a wage earner. In the instance at bar plaintiff's present wage-earning capacity, if he has any, appears to be limited to problematical employment as a barber under conditions suitable to, and favoring his physical condition and, therefore, in an existing labor market with an opening for such a handicapped employee.

"An injured person may recover to the point where he can, if favored, perform special service, if such is obtainable, but, if none can be obtained because of his injury, his capacity to work and earn cannot be measured against his incapacity. If his injury isolates him from employment then, of course, he is not to be held to have capacity to work and earn wages. If his injury has reduced his capacity to work and relegated him to the rating of 'odd lot' or 'nondescript' workers for whom labor openings are extremely limited, then opportunity, within his capacity, should be made to appear."

See, also, *Smith* v. *Pontiac Motor Car Co.*, 277 Mich. 652; *Markey* v. *S. S. Peter & Paul's Parish*, 281 Mich. 292, and 149 A. L. R. 413.

In *Matter of Jordan* v. *Decorative Co.*, 230 N. Y. 522, 525 (130 N. E. 634), quoted with approval in *Hood* v. *Wyandotte Oil & Fat Co.*, *supra*, and *Cundiff* v. *Chrysler Corp.*, 293 Mich. 404, it was said:

"Compensation, if due at all, is to be measured by a prescribed percentage of the 'difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise' (Workmen's compensation law, § 15, subds. 3 and 4). * * *

"The claimant's search for work was fruitless. The inference is permissible that it was his own

physical defects which made the quest a vain one. Failure to find work is, indeed, no ground for compensation if the failure has its origin in general business conditions, the slackness of the demand for labor (*Cardiff Corp.* v. *Hall,* [1911] 1 K. B. 1009, 1018 [104 L. T. 467, 27 T. L. R. 339]; *Durney's Case,* 222 Mass. 461 [111 N. E. 166]). Failure to find work stands upon a different basis when the labor is unmarketable because of the condition of the laborer (*Cardiff Corp.* v. *Hall, supra,* pp. 1018, 1020; *Clark* v. *Gas Light & Coke Co.,* 7 W. C. C. 119 [21 T. L. R. 184]; *Sullivan's Case,* 218 Mass. 141 [105 N. E. 463, L. R. A. 1916 A, 378])."

In *Sandoval* v. *Industrial Commission,* 110 Col. 108 (130 Pac. [2d] 930), the following definition of a strike as given in 4 Restatement, Torts, § 797, was approved: "A concerted refusal by employees to do any work for their employer * * * until the employer grants the concession demanded."

In the case at bar plaintiff could have continued his employment under the same terms and conditions as existed prior to going out on strike. The incapacity of plaintiff to earn wages during this period was not occasioned by his previous injury, but by the intervention of a labor union of which he was a member. Employment for plaintiff was available under conditions existing prior to the strike. Plaintiff is thus in the position of having refused employment until those conditions were modified. Plaintiff's employment did not cease by reason of any overt act upon the part of his employer or because of his inability to work by reason of his accidental injury.

Decision in this case is based upon the fact that work was available to plaintiff by his employer; that plaintiff was physically able to perform such

work, but declined to do so because of a strike called by a labor union of which he was a member.

The award is vacated, with costs to defendant.

CARR, C. J., and BUSHNELL, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred. BUTZEL, J., did not sit.